AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

| | |
|---|---|
| ELECTRONIC STORAGE DEVICES<br>1100 L STREET, NW<br>WASHINGTON, DC 20005 | **APPLICATION AND AFFIDAVIT<br>FOR SEARCH WARRANT**<br><br>CASE NUMBER: |

(Further described below)

I    **PATRICK MILLER**    being duly sworn depose and say:

I am a(n)   **Special Agent with the United States Secret Service**   and have reason to believe
                (Official Title)
that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)
1100 L Street, NW, Washington, DC 20005, as further described in the affidavit which is attached hereto and is incorporated reference

there is now concealed a certain person or property, namely (describe the person or property to be searched)
**contents more fully described in ATTACHMENT A and B, which is attached hereto and is incorporated reference**

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
**evidence, fruits, and instrumentalities of the crimes**

concerning a violation of Title  **18**  United States Code, Section(s) §§ 1029 and 1028 . The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.     ☒ YES    ☐ NO

BARBARA E. KITTAY
Federal Major Crimes Section
(202) 514-6940

Signature of Affiant
Patrick Miller, Special Agent
United States Secret Service

Sworn to before me, and subscribed in my presence

at Washington, D.C.

_____
Date

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH ) | |
| OF ELECTRONIC STORAGE DEVICES ) | Crim. No. |
| LOCATED AT 1100 L STREET, NW ) | |
| WASHINGTON, DC 20005 ) | |

APPLICATION AND AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Patrick Miller, being duly sworn, depose and state as follows:

## I.     Introduction

1.     I am employed as a Special Agent with the United States Secret Service and have been so employed for four (4) years. I am and have been assigned to the Washington Field Office, currently with the Metro Area Fraud Task Force. Prior to that, I was employed as a Senior Trooper for approximately four (4) years with the West Virginia State Police. I have received training in general law enforcement and criminal investigations, including financial investigations related to identity and financial institution fraud. I have conducted and participated in numerous investigations related to these crimes, which have resulted in the arrest and conviction of the offenders involved.

2.     This affidavit is being submitted in support of an application for a search and seizure warrant to obtain evidence of violations of Title 18, United States Code, Section 1029 (access device fraud), and Title 18, United States Code, Section 1028 (identity theft). As set forth elsewhere in this affidavit, the evidence to be searched consists of various electronic storage devices as described in more detail in **Attachment A.**

3.     As is described more fully in this affidavit, based on my investigation so far, there is probable cause to believe that the subject, Marquise D. Carter (Carter), has

committed violations of access device fraud and aggravated identity theft. Furthermore, there is probable cause to believe that evidence, fruits and instrumentalities of these offenses (as described in Attachment B) will be found within these electronic storage devices.

    4.    The facts set forth in this affidavit are based on my own personal knowledge and information gained through my training and experience. During this investigation, I learned additional facts from: other individuals, including other law enforcement officers; interviews of witnesses and my review of documents and computer records related to this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

**II.**    **Background**

    5.    Title 18, United States Code, Section 1029, provides in pertinent part:

(a) Whoever--

> **(1)** knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices;
> **(2)** knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;
> **(3)** knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices;
> **(4)** knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device-making equipment;
> **(5)** knowingly and with intent to defraud effects transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the

2

        aggregate value of which is equal to or greater than $1,000;

        ...

        shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

6.    Title 18, United States Code, Section 1028A, provides in pertinent part:

        Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

### III. Details of Probable Cause for Search and Seizure Warrant

7. My investigation has revealed the following in reference to the above named United States Code violations by Carter. On two separate occasions, namely June 7, 2006 and October 5, 2006, Carter was arrested by the Fredericksburg, VA Police Department (FPD) and the Metropolitan District of Columbia Police Department (MPDC), respectively. During both of these arrests, evidence was discovered during searches of both his person and his vehicle pertaining to violations of 18 USC 1029 and 1028A.

*FREDERICKSBURG VIRGINIA ARREST:*

8. I learned from Detective R. W. Hunnicutt that on June 7, 2006, Carter was arrested by FPD for multiple charges including: Credit Card Forgery, Credit Card Theft, Obtaining Money by False Pretenses, and Identity Theft. Carter and two other co-conspirators were identified using re-encoded credit cards to make purchases at various stores in Fredericksburg, Virginia. Specifically, re-encoded credit cards display an embossed name and credit card number on the front of the card, different than the name and credit card number encoded on the magnetic stripe, located on the back of the card. When a re-encoded credit card is swiped through the a store's point of sale credit card terminal reader, the credit card account being

3

charged for the sale will be the encoded credit card account information on the magnetic stripe. Typically, a fraud suspect will utilize re-encoded credit cards bearing their own embossed name, in order to lessen suspicion if challenged by a store clerk. On 6/6/06, Carter and co-conspirators were observed on video obtained from Wal-Mart in Fredericksburg, Virginia, by Detective Hunnicutt purchasing high dollar items with credit cards later determined to be fraudulently re-encoded. Also, on 6/7/06, Carter was observed by Target Store Loss Prevention officers in Fredericksburg, Virginia with the same two co-conspirators, purchasing high dollar items at the register. Both Carter and another co-conspirator were using different credit cards to make multiple purchases, and each time they would swipe a card, it would return to a different name. In all, FPD authorities were able to obtain video footage showing Carter making a total of three purchases and one attempt, at both the Wal-Mart and Target stores, using various re-encoded credit cards embossed on the front with Carter's name and credit card number, but with different names and credit card account numbers re-encoded on the magnetic strip.

    9. After Carter was advised of his Miranda Rights by a FPD detective, Carter made statements that some of the credit card numbers used by him were stolen. Carter gave FPD officers consent to search his rented vehicle. Inside Carter's vehicle, FPD officers discovered additional re-encoded credit cards and a white, Apple brand laptop computer. Inside a briefcase identified by Carter as belonging to him, FPD officers discovered stolen mail belonging to at least forty-five individuals from the area of North Arlington/Mclean, Virginia which included numerous Social Security numbers. Also discovered in Carter's briefcase were: three (3) computer thumb drives; an Apple I-pod data storage device; several pre-paid gift cards; and numerous receipts for purchases using re-encoded credit cards, and other items more fully described in following sections.

*MAIL FRAUD SCHEME:*

     10. Postal Inspector Ronell Parker and I both reviewed the stolen mail from Carter's briefcase mentioned above in paragraph 9. A suspicious address was identified which appeared on several pieces of mail: 1730 N. Lynn Street, #A03, Arlington Virginia, 22209. Inspector Parker visited this address, which is a company named PO Boxes, Etc. Inspector Parker inquired about box #A03, and obtained an application dated 12/16/05, in the name of Marquise Demetrious Carter, using a District of Columbia driver's license number 1610863. I conducted a driver's license query through District of Columbia Department of Motor Vehicles for license number 1610863, and confirmed this license number belongs to Marquise Demetrious Carter. Some of the mail listing 1730 N. Lynn Street, #A03, Arlington, Virginia, discovered in Carter's briefcase, included Purpose brand reloadable credit card mailers for Henry M. Gandy, David G. Settle, and Margaret Romano. I obtained and reviewed the Purpose brand credit card account records for Gandy, Settle, and Romano. All of these accounts were opened using their real social security numbers. Carter's briefcase contained numerous pieces of stolen mail for both Gandy and Settle, including a Virginia Department of Taxation mailer listing the Social Security number of Settle. Gandy and Settle have both confirmed to me that they have never opened a Purpose brand credit card and have never authorized anyone to do so.

*ASSOCIATION MANAGEMENT GROUP SCHEME:*

     11. Also included in Carter's briefcase from FPD, was a 2005 W-2 Wage and Tax Statement from Corestaff Services, LP, a temporary staffing company, for Marquise D. Carter. Employment records for Marquise Carter were obtained from Corestaff Services. These records show that Carter worked as a temporary employee for Association Management Group (AMG), located in McLean, Virginia, from 8/10/05 to 8/17/05. AMG is a private

company which manages various functions of client associations, including: human resources, accounting, credit card payment processing, and so forth. The National Certification Board for Therapeutic Massage and Bodywork (NCBTMB) was one of AMG's client associations during Carter's one-week tenure. NCBTMB was in the process of ending its client relationship with AMG due to an out-of-state move, leading to AMG hiring numerous temporary employees to assist with closing the NCBTMB account. Carter's briefcase contained two personal checks listing the payee as NCBTMB, both dated 8/12/05. Also contained in Carter's briefcase were several applications to NCBTMB from the 2003 time period, which included credit card numbers for payment purposes. According to AMG officials, all of these files would have been stored in close proximity to where the account closing was being conducted by Carter and the other temporary employees from CoreStaff. In reference to the Purpose credit card in the name of Margaret Romano, referenced above in paragraph 10, a search of the NCBTMB website showed Romano to hold a current certification through NCBTMB. A public database records check of Romano's personal identifying information revealed that her Social Security number was used to apply for the Purpose brand reloadable credit card, delivered to Carter's rented mailbox in Arlington, VA.

  12. World Airline Entertainment Association (WAEA) was also a client association of AMG during Carter's tenure. Two faxed applications for WAEA functions, which also contained credit card numbers, were also discovered in Carter's briefcase. The dates on the fax headers were 8/16/05 and 8/17/05, respectively. One of these credit card numbers has reported fraudulent activity in late 2005. I visited Association Management Group and discovered that Carter would have had access to the fax machine where the WAEA applications were received, due to it being located in the same hallway where the NCBTMB closing project took place.

***WASHINGTON DC ARREST:***

13. On October 5, 2006, Carter was arrested for charges unrelated to credit card fraud. During the search of Carter's vehicle, incident to his arrest, officers discovered: a laptop computer, an external hard drive, numerous data memory cards, a credit card re-encoder, numerous re-encoded credit cards, and several unembossed white credit cards, which had also been re-encoded. There were also several credit/debit cards embossed with Carter's name on the front, but were re-encoded with various other names and credit card numbers.

14. On October 25, 2006, a search warrant was obtained by Detective Espinosa, MPDC, for most of the electronic property found during this arrest. This search warrant was subsequently executed by the United States Secret Service. Special Agent Kopeck discovered that close to two hundred names and account numbers for credit cards were found within the computer, hard drive, and memory cards. These lists contained the full track data contained within the respective credit card's magnetic stripe. Based on my training and experience, this information would typically be obtained through usage of a credit card skimming device. Escan Exeba software was discovered on the laptop hard drive and on a thumb drive labeled "Daddy." Exeba software can be used for re-encoding credit cards. All but two of the re-coded cards in Carter's possession were contained within the database of credit card account information on Carter's computer hard drive and memory cards. Additionally, almost all of the names and credit card numbers fraudulently used by Carter and his associates, in relation to their FPD arrest in June, 2006, were contained within Carter's computer hard drive and memory cards during this October incident.

**IV.     Seizure of Equipment and Data**

15.   As previously referenced in paragraph 8, on June 7, 2006, FPD arrested Carter in Fredericksburg, VA.   The evidence seized pursuant to Carter's arrest was stored in the FPD evidence vault until January 8, 2007, when FPD relinquished custody and control of these electronic storage devices, namely Items 1-6 in Attachment A to me**.** I then transported and placed this evidence into the United States Secret Service, Washington Field Office evidence vault located at 1100 L St., NW, Washington, DC.

16.   As previously referenced in paragraph 13, on October 5, 2006, MPDC arrested Carter and seized numerous pieces of evidence related to violations of 18 USC 1028 and 1029.  Of the items seized, all but three cell phones were searched subsequent to a search warrant.  On November 1, 2006, MPDC transported Items 7-9, the three cell phones, listed in Attachment A, to the United States Secret Service, Washington Field Office, located at 1100 L St., NW, Washington, DC, where these items were placed into the evidence vault.

17.   The aforementioned facts show probable cause that access device fraud and identity theft, in violation of Title 18, United States Code, Sections 1029, and 1028A, has been committed and that evidence of those crimes, including the items in Attachment B, will be found within these electronic storage devices.  Carter has used computers to store fraudulently obtained credit card account names and numbers within his computers, hard drives, and memory sticks and the evidence located within the electronic storage devices mentioned in Attachment A likely will include account numbers, phone numbers, names, and other personal data on a variety of individuals and/or co-conspirators.  I know that individuals committing access device fraud and identity theft frequently use computers as storage devices for evidence of crime because individuals involved in such schemes intentionally and

inadvertently maintain records and evidence relating to their crimes on their computers. As such, the evidence obtained during the requested search may provide vital details regarding the identity and use of account numbers from stolen credit cards and copies of personal identifying information of victims of identity theft.

**V.      Analysis of Electronic Data**

18.     The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file directories and the individual files that they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); examining all the structured, unstructured, deleted, and overwritten data on a particular piece of media; opening or reading the first few pages of such files in order to determine their precise contents; scanning storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic key-word searches through all electronic storage areas to determine whether occurrences of such language contained in the storage areas are intimately related to the subject matter of the investigation.

19.     Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory,

is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

20.     The volume of data stored on many computer systems and storage devices will typically be so large that it will take some time. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing fifteen gigabytes of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 7.5 million pages of data, which, if printed out, would completely fill a 10' x 12' x 10' room to the ceiling.

21.     Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

## VI. <u>Conclusion</u>

22.     Based on the above information, I submit that probable cause exists to believe that evidence, fruits and/or instrumentalities of crime are present within the electronic storage devices outlined in Attachment A.  I therefore request that a search and seizure warrant be issued, authorizing me and other law enforcement officers to search the electronic storage devices, as described in Attachment A for the items listed in Attachment B.

_____
Patrick Miller,
Special Agent
United States Secret Service

Subscribed and sworn before me
this ___ th day of February, 2007.

_____
United States Magistrate Judge

## ATTACHMENT A

### ITEMS TO BE SEARCHED

The following items located at the United States Secret Service Office at 1100 L. Street, N.W., Washington D.C.:

1. One (1) Cruzer Thumb Drive (1 GB)

2. One (1) Cruzer Thumb Drive (32 MB)

3. One (1) Cruzer Thumb Drive (256 MB)

4. One (1) Black Apple I-Pod, 30 GB, S/N #4J61298KTXK

5. One (1) Motorola Boost Cell Phone- Model I415

6. One (1) white Apple IBook G4 laptop computer, Unknown S/N

7. One (1) black colored Kyscera Virgin Mobile cell phones, model #K612 S/N#220FF436

8. One (1) silver colored Verizon Pantech cell phone, S/N# PN210PP

9. One (1) black colored Audiovox cell phone, model#CDM8915UM


**ITEMS 1-6 CHECKED INTO USSS EVIDENCE UNDER USSS CASE #115-768-83155-S

**ITEMS 7-9 CHECKED INTO USSS EVIDENCE UNDER MPDC PROPERTY CONTROL #  206562

**ATTACHMENT B**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

All evidence related to Marquise Carter's scheme to commit access device fraud and identity theft in violation of Title 18, United States Code, 1029 (access device fraud), and 1028 (identity theft), including but not limited to the following:

   1) Records of, and relating to, including word searches and internet searches for access device numbers, financial institutions issuing such numbers, names and addresses of account holders, and other information identifying specific individuals;

   2) Records, receipts, notes, ledgers, computer software and other materials relating to the production of, use of, or trafficking in access devices;

   3) Notes, calendars, chronologies, and summaries of daily activities, including computer activities; and

   4) Cell phone memory cards and information on such cards showing names, phone numbers, and addresses of associates and/or co-conspirators of the trafficking in and/or use of counterfeit and unauthorized access devices and identity theft.